**FILED**
**Aug 31, 2020**
**03:05 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| **ROSALIND VALERIO,** | ) | **Docket No. 2019-06-0971** |
| **Employee,** | ) | |
| **v.** | ) | |
| **CITY OF SPRING HILL,** | ) | **State File No. 30370-2018** |
| **TENNESSEE,** | ) | |
| **Employer,** | ) | |
| **And,** | ) | **Judge Joshua Davis Baker** |
| **PUBLIC ENTITY PARTNERS,** | ) | |
| **Carrier.** | ) | |

_____

## EXPEDITED HEARING ORDER
_____

Ms. Valerio requested additional medical benefits and reinstatement of temporary partial disability benefits for a left-foot injury. The City of Spring Hill denied these benefits asserting she needed no further treatment and was released to return to work without restrictions. After an August 18, 2020 Expedited Hearing, the Court holds Ms. Valerio is not entitled to additional medical benefits or reinstatement of temporary partial disability benefits.

## Claim History

The City of Spring Hill accepted an injury Ms. Valerio suffered on June 18, 2019, when she bumped a disassembled couch and pieces of it fell on her left foot. She chose a provider from a panel and saw a physician assistant that day.

The physician assistant noted a contusion on Ms. Valerio's left foot, and X-rays showed no fracture or significant soft-tissue swelling. Ms. Valerio continued to complain of pain, so she returned a couple of weeks later.

When Ms. Valerio saw the physician assistant again, she underwent more x-rays with physician assistant noting a "small bone chip." She wrote, "Initially x-rays at Spring Hill Imaging without fracture, today one taken here with small bone chip noted at 5th

1

metatarsal, recommend Orthopedic referral for further evaluation and off work until Orthopedic appointment."

Eight days later, Ms. Valerio visited orthopedist Dr. Chase Corn, whom she chose from a panel, and he explained that x-rays showed an "os peroneum" but no fracture or malalignment. His physical examination of Ms. Valerio's foot revealed "minimal swelling" and "no obvious bruising." He observed a disparity between her subjective complaints and her foot's condition and candidly wrote, "Structurally, her foot seems to be okay. She notes that she is unable to bear weight and in severe pain. I cannot explain this based on her exam." So, Dr. Corn ordered an MRI, restricted her work, and gave her an orthotic boot until he could review the results.

Two days later, the MRI showed nothing wrong with Ms. Valerio's foot other than an unrelated ganglion cyst. Dr. Corn concluded that "her imaging studies profoundly contradict" her pain complaints. He described a "bizarre encounter" in which Ms. Valerio vehemently insisted a bone was sticking out of her foot. He tried to explain that she did not need surgery because she had "normal imaging studies." He concluded, "[T]here is nothing to be repaired." Because Ms. Valerio would not accept his conclusion, he encouraged her to seek a second opinion.

Ultimately, Spring Hill authorized Ms. Valerio to see two orthopedists and a physiatrist, and all agreed that she had no fracture, abnormality, or foot malalignment. All noted a small "os peroneum," described by the physiatrist as a small piece of cartilage common in about one-fourth of the population.

However, Ms. Valerio appeared at her appointments in an orthotic boot and complained of severe pain, saying that wearing tennis shoes "[felt] like someone [was] stabbing her in the side of the foot." She testified that walking barefoot was very uncomfortable and that she could only walk without her orthotic boot for very short periods of time. She also said she still wears her boot everywhere, limps, and deals with pain.

Investigator James Richardson, who filmed Ms. Valerio on three days in September and October, testified he only saw her limping or using her orthotic boot for doctors' appointments or at her employer's office in City Hall. On September 13, he filmed her walking barefoot in her yard and observed no limping or other signs of discomfort. Later that day, Ms. Valerio wore the orthotic boot into City Hall but walked easily without it while shopping in flip flops later that afternoon. On October 16, Mr. Richardson observed her walking without a limp or the orthotic boot. On October 30, Ms. Valerio wore the orthotic boot into a doctor's appointment. Later that afternoon, she went shopping in tennis shoes, without limping or exhibiting any discomfort.

2

On October 30, Spring Hill filed a Notice of Change or Termination, terminating Ms. Valerio's temporary disability benefits after physiatrist Dr. Jeffrey Hazlewood placed her at maximum medical improvement without permanent impairment or restrictions.

## Findings of Fact and Conclusions of Law

Ms. Valerio must demonstrate that she is likely to prevail at a final hearing in proving that she needs additional treatment caused by the work injury and that she earned less than her average weekly wage due to work restrictions. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2019).

Given the relief requested and facts presented, the Court must decide two issues: 1) whether Ms. Valerio's foot still requires treatment "made reasonably necessary" by her work accident; and, 2) whether a treating physician imposed restrictions that the City of Spring Hill cannot accommodate, which would entitle her to reinstatement of temporary partial disability benefits. The Court finds neither issue in her favor.

First, the Court finds Ms. Valerio is unlikely to prove she needs additional treatment "made reasonably necessary" by her injury because the only admissible expert medical proof of causation suggested she suffered a contusion and needs no further treatment. The opinion that she suffered a more severe injury came from a physician assistant, who is not an expert qualified to testify about medical causation. *Dorsey v. Amazon.com, Inc.,* 2015 TN Wrk. Comp. App. Bd. LEXIS 13, at *9 (May 14, 2015). The Court cannot accept a physician assistant's opinion over two orthopedists and a physiatrist. Accordingly, the weight of the medical evidence shows that Ms. Valerio suffered only a contusion and needs no further treatment.[1]

Second, the Court finds Ms. Valerio is unlikely to prove entitlement to temporary partial disability benefits at a final hearing. To recover these benefits, she must prove she earned less than her average weekly wage due to work restrictions. *See* Tenn. Code Ann. § 50-6-207(2)(A). Since the City of Spring Hill terminated temporary partial disability benefits on October 30 when Dr. Hazlewood returned Ms. Valerio to work without restrictions, the Court holds she failed to prove entitlement to temporary partial disability benefits.

---

[1] Also, these physicians' objective findings and the investigator's observations suggest that Ms. Valerio exaggerated both her pain and her capability. In this Court's view, these objective findings and observations weaken her assertion that she needs additional medical treatment.

**IT IS ORDERED** as follows:

1. The Court denies Ms. Valerio's requested relief.

2. The Court sets this claim for **a scheduling hearing on October 26, 2020, at 9:30_ a.m. Central Time.**  The parties must call (615) 741-2113 or toll-free at (855) 874-0474 to participate.  Failure to call might result in a determination of the issues without the party's participation.

**ENTERED August 31, 2020.**

_____

**Judge Joshua Davis Baker**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1. Medical Records
2. Affidavit of Ms. Valerio
3. First Report of Injury
4. Wage Statement
5. Notice of Change of Termination of Benefits
6. Teksid Complaint and Agreed Order
7. Investigative Reports and Photographs of Mr. Richardson

Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Motion to Continue
5. Response to Motion to Continue
6. Order Granting Motion to Continue
7. Order Setting Status Conference
8. Motion to Conduct Expedited Hearing by Videoconference

**CERTIFICATE OF SERVICE**

I certify that a copy of this Order was sent as indicated on August 31, 2020.

| Name | Certified Mail | Email | Service sent to: |
|---|---|---|---|
| Rosalind Valerio, Employee | | X | Rvnemak01@gmail.com |
| Jennifer Orr, Employer's Attorney | | X | Jennifer.orr@farrar-bates.com, Rebecca.mcfadden@farrar-bates.com |

_____

**Penny Shrum, Court Clerk**
wc.courtclerk@tn.gov

6



Expedited Hearing Order Right to Appeal:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies). Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties

**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____
*[Signature of appellant or attorney for appellant]*